LOUISE PRICE PARSONS v. JEFFERSON-PILOT CORPORATION

No. 9118SC852

(Filed 2 June 1992)

1. **Corporations § 133 (NCI4th)— disclosure of names of shareholders—beneficial owners**

    A beneficial owner of corporate shares is a "shareholder" whose name must be disclosed to a qualified shareholder pursuant to N.C.G.S. § 55-16-02(b)(3) when the corporation has obtained a nonobjecting beneficial owners (NOBO) list pursuant to 17 C.F.R. § 240.14b-1(c) or when there is a nominee certificate regarding that owner on file with the corporation. Where the record reveals that defendant corporation has not obtained a NOBO list, defendant has an obligation to disclose to plaintiff shareholder only the names of nonobjecting beneficial owners who have filed nominee certificates with the defendant.

    **Am Jur 2d, Corporations § 349.**

    **What corporate documents are subject to shareholder's right to inspection. 88 ALR3d 663.**

2. **Corporations § 151 (NCI4th)— accounting records of public corporation—inspection by shareholder—no statutory or common law right**

Plaintiff, a shareholder of a public corporation, had no right under N.C.G.S. § 55-16-02(b)(2) to inspect the accounting records of the corporation because N.C.G.S. § 55-16-02(b) provides in part that "a shareholder of a public corporation shall not be entitled to inspect or copy any accounting records of the corporation." Nor did N.C.G.S. § 55-16-02(e)(2) preserve for plaintiff shareholder the common law right to inspect defendant corporation's accounting records since this common law right could properly be restricted by statute. However, this cause must be remanded for a determination as to whether the records sought by plaintiff are in fact accounting records.

**Am Jur 2d, Corporations § 349.**

**What corporate documents are subject to shareholder's right to inspection. 88 ALR3d 663.**

3. **Corporations § 151 (NCI4th)— minutes of shareholders' meetings—shareholder actions without meetings—three-year period—inspection by shareholder**

Plaintiff shareholder was entitled under N.C.G.S. § 55-16-02(a) and (e)(4) to inspect the minutes of all shareholders' meetings for the three years preceding her demand and the records of all shareholder actions taken without meetings for the three years preceding her demand without meeting the requirements of N.C.G.S. § 55-16-02(c).

**Am Jur 2d, Corporations § 349.**

**What corporate documents are subject to shareholder's right to inspection. 88 ALR3d 663.**

4. **Corporations § 151 (NCI4th)— shareholder inspection of corporate records—statement of proper purpose**

Plaintiff shareholder stated a proper purpose for demanding to inspect corporate records within the purview of N.C.G.S. § 55-16-02(c)(1) where she stated that her purpose was to determine "any possible mismanagement of the Company or any possible misappropriation, misapplication or improper use of any property or asset of the Company."

PARSONS v. JEFFERSON-PILOT CORP.

[106 N.C. App. 307 (1992)]

**Am Jur 2d, Corporations § 369.**

**Purposes for which stockholder or officer may exercise right to examine corporate books and records. 15 ALR2d 11.**

5. **Corporations § 151 (NCI4th)— shareholder inspection of corporate records—describing purpose and records with particularity**

Plaintiff shareholder described her purpose for seeking to inspect corporate records with reasonable particularity where she stated that her purpose was to determine possible mismanagement of the corporation or improper use of corporate property where the record shows that plaintiff had knowledge only of a poor return on her investment in the corporation. Plaintiff also described the records with reasonable particularity where she designated "all records of any final action taken" by the board of directors or by a committee of the board of directors, the "minutes of any meeting of the shareholders," and the "records of action taken by the shareholders of the Company without a meeting."

**Am Jur 2d, Corporations § 369.**

**Purposes for which stockholder or officer may exercise right to examine corporate books and records. 15 ALR2d 11.**

6. **Corporations § 151 (NCI4th)— shareholder inspection of corporate records—direct connection to purpose**

Where it appears that many corporate records sought to be inspected by plaintiff shareholder have no connection to plaintiff's proper purpose of determining mismanagement and improper use of corporate property, plaintiff's action under N.C.G.S. § 55-16-04(b) to compel disclosure of the records is remanded to the trial court for an *in camera* examination of the desired records to determine which records, if any, are directly connected with plaintiff's purpose. N.C.G.S. § 55-16-02(c)(3).

**Am Jur 2d, Corporations § 369.**

**Purposes for which stockholder or officer may exercise right to examine corporate books and records. 15 ALR2d 11.**

**7. Rules of Civil Procedure § 11 (NCI3d)— complaint meeting factual and legal sufficiency prongs — sanctions for improper purpose — remand to trial court**

The trial court erred in concluding that plaintiff's complaint and motion for a preliminary injunction could not have been interposed for an improper purpose so as to permit Rule 11 sanctions because they met the factual and legal sufficiency prongs of Rule 11, and the case must be remanded to the trial court for a determination as to whether plaintiff filed her complaint and motion for an improper purpose. N.C.G.S. § 1A-1, Rule 11.

**Am Jur 2d, Pleading § 211.**

APPEAL by plaintiff and defendant from order entered 16 July 1991 in GUILFORD County Superior Court by *Judge Steve Allen.* Heard in the Court of Appeals 7 April 1992.

*Stern, Graham & Klepfer, by James W. Miles, Jr., and Jones, Day, Reavis & Pogue, by Richard M. Kirby and Michael J. McConnell, for plaintiff-appellant/appellee.*

*Robinson, Bradshaw & Hinson, P.A., by Russell M. Robinson, II, Mark W. Merritt, and Frank E. Emory, Jr., for defendant-appellee/appellant.*

GREENE, Judge.

Both the parties appeal from an order entered 16 July 1991 allowing in part and denying in part the plaintiff's request under N.C.G.S. § 55-16-04 (1990) to inspect and copy various corporate records of the defendant and denying the defendant's motion for sanctions under N.C.G.S. § 1A-1, Rule 11 (1990) (Rule 11).

At the time of the trial court's order, the plaintiff owned 300,000 shares of common stock of the defendant valued at more than 12.5 million dollars. She had owned that stock for at least six months before 14 February 1991. On 14 February 1991, the plaintiff sent to the defendant a written notice of her demand to inspect and copy various materials of the defendant pursuant to N.C.G.S. § 55-16-02 (1990 & Supp. 1991). The plaintiff requested, among other things, the following:

8. For the purpose of enabling the Shareholder to communicate with other shareholders of the Company, a complete

record or list of the holders of Common Stock of the Company, certified by the Company's transfer agent, showing the name and address of each holder and the number of shares of Common Stock of the Company registered in the name of each holder, as of the most recent date that such list is available and, as promptly as possible following the record date for the 1991 Annual Meeting of Shareholders, as of such record date.

9. For the purpose of enabling the Shareholder to communicate with other shareholders of the Company, magnetic computer tape lists of the holders of Common Stock or the Company as of the most recent date that such items are available and, as promptly as possible following the record date for the 1991 Annual Meeting of Shareholders, as of such record date, in each case showing the name and address of each holder and the number of shares of Common Stock of the Company held by each holder, such computer processing data as is necessary to make use of such magnetic tape and a printout of such magnetic computer tape for verification purposes.

10. For the purpose of enabling the Shareholders to communicate with other shareholders of the Company, all transfer sheets in the possession of the Company or its transfer agent showing changes in the lists of holders of Common Stock of the Company referred to above from the date of such lists to the date of inspection hereunder.

11. For the purpose of enabling the Shareholder to communicate with other shareholders of the Company, all information in the Company's possession or control or that can reasonably be obtained from nominees of any central certificate depository system up to the day of inspection hereunder concerning the number and identities of the actual beneficial owners of Common Stock of the Company, including a breakdown of any holdings in the name of Cede & Co. or any other clearing agency or other similar nominee, and a list or lists containing the name and address of each participant, and the number of shares of Common Stock of the Company attributable to such participant, in any employee stock ownership or comparable plan of the Company in which the voting of Common Stock of the Company is controlled, directly or indirectly, individually or collectively, by the participants in the plan.

12. For the purpose of enabling the Shareholder to communicate with other shareholders of the Company, all lists and other data in the possession or control of the Company or reasonably obtainable or available pursuant to the Securities and Exchange Act Rule 14B-1(c) and 14b-2(e)(2) and (3) regarding the names and addresses of, and number of shares of Common Stock held by each of, the beneficial owners of shares of Common Stock, which information the Shareholder undertakes to utilize solely for purposes of corporate communications.

13. For the purpose of determining any possible mismanagement of the Company or any possible misappropriation, misapplication or improper use of any property or asset of the Company, all records of any final action taken, with or without a meeting, by the Board of Directors of the Company, or by a committee of the Board of Directors of the Company while acting in place of the Board of Directors of the Company on behalf of the Company, minutes of any meeting of the shareholders of the Company and records of action taken by the shareholders of the Company without a meeting.

14. For the purpose of determining any possible mismanagement of the Company or any possible misappropriation, misapplication or improper use of any property or asset of the Company, all accounting records of the Company, including without limitation any and all records evidencing, reflecting or describing:

(a) Any and all cash or non-cash compensation directly or indirectly paid or distributed to any executive officer or director of the Company for services rendered in all capacities to the Company or a subsidiary of the Company during the past five years;

(b) Any and all cash or non-cash compensation that would have been directly or indirectly paid or distributed to any executive officer or director of the Company for services rendered in all capacities to the Company or a subsidiary of the Company during the past five years but for the fact that such payment or distribution was deferred;

(c) Any and all cash or non-cash compensation proposed to be directly or indirectly paid or distributed in

PARSONS v. JEFFERSON-PILOT CORP.

[106 N.C. App. 307 (1992)]

the future to executive officers or directors of the Company or any subsidiary of the Company pursuant to a plan;

(d) Any and all full or partial, direct or indirect, payments or reimbursements by the Company to or on behalf of any executive officer or director of the Company or any spouse or other companion or relative of any such executive officer or director in the past five years, in respect of matters that would normally be considered to be of a personal nature, including without limitation (i) home repairs or improvements, (ii) housing or other living expenses provided at such executive officer's, director's, spouse's companion's or relative's principal or vacation residence, (iii) domestic, security or other services, (iv) personal use of any automobile, airplane, boat, yacht or recreational vehicle, (v) personal use of any lodge, hunting, fishing or other sporting or recreational facility or apartment, residence or other living quarters, (vi) personal travel, entertainment or related expenses (including club memberships), and (vii) legal, tax, accounting, investment or other professional fees for matters unrelated to the business of the Company;

(e) Any and all third-party benefits, including without limitation favorable bank loans or benefits from suppliers, to any executive officer or director of the Company or any spouse or other companion or relative of any such executive officer or director in the past five years wherein the Company compensated, directly or indirectly, the bank, supplier or other third party for providing such loans, services or other benefits;

(f) Any and all "incidental" personal benefits, such as furnishing for executive officers or directors at offices maintained by the Company, parking spaces and meals at facilities operated or maintained by the Company in the past five years;

(g) any and all insurance benefits or other life, health, hospitalization, medical, disability, retirement, education or relocation plans or benefits directly or indirectly provided by the Company to executive officers or directors of the Company or any spouse or other companion or relative

of any such executive officer or director in the past five years;

(h) Any and all nonmonetary benefits directly or indirectly derived in the past five years by any executive officer or director of the Company or any spouse or other companion or relative of any such executive officer or director that are not included in subsections (a) through (g) above; and

(i) Any and all direct or indirect cash or noncash payments by the Company or direct or indirect contributions by the Company of property or services in the past five years to or on behalf of, or for the direct or indirect benefit of, any governmental official, lobbyist, chamber of commerce, trade association, business or civic organization or other person, entity or organization with the purpose or effect of influencing any governmental, judicial, legislative or regulatory action, including without limitation any action relating to legislation or regulations pertaining to corporate takeovers, acquisitions or changes of corporate control, corporate business combination transactions, the granting or denial of voting rights to holders of shares of corporate stock, the validity of so-called "poison pill" rights plans or any other takeover defensive measure.

The defendant responded to the plaintiff's demand by letter dated 27 February 1991. The defendant agreed to allow the plaintiff to inspect and copy various corporate documents pursuant to N.C.G.S. § 55-16-02(a) including, among other things, the defendant's articles of incorporation, bylaws of the corporation, the minutes of all meetings of shareholders of the company for the three years preceding her demand, and the records of all shareholder action taken without a meeting for the three years preceding her demand. Pursuant to N.C.G.S. § 55-16-03(d) (1990), the defendant also agreed to allow the plaintiff to inspect and copy its shareholder list as of the 7 March 1991 record date for the defendant's 1991 annual shareholders' meeting scheduled for 6 May 1991. The defendant, however, refused to allow the plaintiff to inspect the other materials requested in her written demand.

On 4 March 1991, the plaintiff again demanded that the defendant allow the plaintiff to inspect the materials requested in paragraphs 8 through 14 of her written demand dated 14 February

**PARSONS v. JEFFERSON-PILOT CORP.**

[106 N.C. App. 307 (1992)]

1991. In an attempt to narrow the scope of her demand with regard to the accounting records sought under paragraph 14, however, the plaintiff stated that "the accounting records sought deal only with compensation paid to, perquisites made available to and relationships with *only* the executive officers and directors of the Company (as listed in the Company's most recent annual report), their family members and companions. Shareholders are entitled to know how scarce corporate resources are utilized."

On 12 March 1991, the defendant made available to the plaintiff its list of shareholders who were entitled to receive notice of the 1991 annual shareholders' meeting. The defendant again refused, however, to allow the plaintiff to inspect any other materials relating to shareholders such as magnetic computer tapes, daily transfer sheets, and a CEDE breakdown.[1] The defendant also refused to obtain and make available to the plaintiff a NOBO list that it did not have and had never used.[2] By letter dated 21 March 1991, the plaintiff complained to the defendant about its repeated "stonewalling" tactics. On 25 March 1991, the defendant responded to the plaintiff's 21 March 1991 letter and denied any "stonewalling" on its part. The defendant reaffirmed its position that the plaintiff's request for inspection of the various corporate materials was "vague, burdensome and totally without basis under North Carolina law."

On 6 May 1991, the day of the defendant's annual shareholders' meeting, the plaintiff filed a complaint and a motion for a preliminary injunction seeking to compel the defendant to allow her to inspect

---

1. A CEDE breakdown is a list which "identifies the brokerage firms and other record owners who bought shares in a street name for their customers and who have placed those shares in the custody of depository firms such as Depository Trust Co.; these shares are reflected in the corporation's records only under the names of nominees used by such depository firms. Depository Trust Co. uses 'CEDE & Co.' as the name of the nominee for shares it holds for brokerage firms, and such lists, regardless of the nominee names adopted by other depository firms, are known as 'CEDE lists.'" *Sadler v. NCR Corp.*, 928 F.2d 48, 50 (2d Cir. 1991). A CEDE breakdown, however, does not contain the names of the non-objecting beneficial owners of the shares in the custody of the depository firms.

2. "A 'NOBO list' (non-objecting beneficial owners) contains the names of those owning beneficial interests in shares of a corporation who have given consent to the disclosure of their identities. The Securities and Exchange Commission requires brokers and other record holders of stock in street name to compile a NOBO list at a corporation's request." *Sadler*, 928 F.2d at 50; *see* 17 C.F.R. § 240.14b-1(c) (1991) (allowing but not requiring corporation to require production of NOBO list).

the materials outlined in her previous written demands. At the end of the shareholders' meeting, a representative of the plaintiff made a public announcement that the plaintiff, at that moment, was filing a lawsuit against the defendant. After the announcement, the plaintiff held a press conference where she invited members of the press to obtain copies of her pleadings from the courthouse.

The defendant filed an answer on 4 June 1991 denying the material allegations of the complaint, and on 17 June 1991, the defendant filed a motion for sanctions under Rule 11. On 18 June 1991, the plaintiff moved to amend her complaint. At some time before the hearing on these motions, the defendant allowed the plaintiff to inspect its magnetic computer tapes, daily transfer sheets, CEDE breakdown, and all other items the defendant used in communicating with its shareholders. The defendant, however, again refused to obtain and make available a NOBO list for the plaintiff.

The plaintiff's motion for a preliminary injunction and the defendant's motion for sanctions were heard at the 1 July 1991 Civil Non-Jury Session of Superior Court in Guilford County. On 16 July 1991, the trial court entered its order in which it concluded the following: That the plaintiff was a qualified shareholder; that she had made a timely, written demand to inspect the defendant's records; that she made her demand in good faith and for the proper purpose of determining any possible mismanagement, misappropriation, misapplication, or improper use of corporate assets or property; that in her demand she described her purpose and the records with reasonable particularity; that the records are directly connected with her purpose; that to the extent that her demand did not comply with N.C.G.S. § 55-16-02(c), she nonetheless may inspect the defendant's records pursuant to her common law right of inspection; that the records concerning executive compensation, "perks," benefits, and other incidentals are not true accounting records, but to the extent that they are accounting records, the plaintiff nonetheless has a common law right to inspect them under N.C.G.S. § 55-16-02(e)(2) despite N.C.G.S. § 55-16-02(b); that the plaintiff filed her complaint and motion after diligent factual and legal inquiry and therefore for a proper purpose; and that N.C.G.S. § 55-16-02(b) does not require the defendant to obtain a NOBO list for the plaintiff. Based on its findings and conclusions, the trial court denied the defendant's motion for sanctions and ordered the defendant to allow the plaintiff to inspect and copy all the items listed in

## PARSONS v. JEFFERSON-PILOT CORP.

[106 N.C. App. 307 (1992)]

paragraphs 13 and 14 of the plaintiff's 14 February 1991 written demand.

---

The issues are whether (I) the plaintiff may require the defendant to produce a list of its non-objecting beneficial owners who are in no way registered in the records of the defendant; (II) the plaintiff may require the defendant to allow her to inspect the defendant's accounting records; (III) the plaintiff's designation of various corporate records was "directly connected" to her proper purpose for inspection; and (IV) a pleading or motion which meets the factual and legal sufficiency prongs of Rule 11 may nonetheless be interposed for an improper purpose.

I

NOBO List

[1] A corporation or its agent is required to maintain a record of its shareholders in a form which permits it to prepare an alphabetical list of the names and addresses of its shareholders. N.C.G.S. § 55-16-01(c) (1990). Upon a timely, written demand and subject to the requirements of N.C.G.S. § 55-16-02(c), a qualified shareholder of a corporation may inspect and copy this record of shareholders. N.C.G.S. § 55-16-02(b)(3). The plaintiff argues that the term "shareholders" in the phrase "record of shareholders" includes non-objecting beneficial owners of shares whether or not they are registered in the records of the corporation. We disagree.

Under the Revised Model Business Corporation Act (Act) as enacted in North Carolina, a "shareholder" is "the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." N.C.G.S. § 55-1-40(22) (Supp. 1991); see N.C.G.S. § 55-16-02(f) ("shareholder" includes beneficial owners whose beneficial ownership has been certified to corporation by voting trust or nominee). Therefore, a beneficial owner of shares is a "shareholder" within the meaning of N.C.G.S. § 55-16-02(b)(3) when the corporation has obtained a NOBO list pursuant to 17 C.F.R. § 240.14b-1(c) listing that owner or when there is a nominee certificate regarding that owner *on file* with the corporation. See RB Assocs. v. Gillette Co., No. 9711, 1988 WL 27731 (Del. Ch. Mar. 22, 1988) (although corporation not required to exercise federal rights under SEC shareholder com-

PARSONS v. JEFFERSON-PILOT CORP.

[106 N.C. App. 307 (1992)]

munication rules and thereby obtain NOBO list for shareholder, corporation in fairness should provide shareholder with such list if corporation has it or, to prevent manipulation, if it obtains such list after proper demand); *Shamrock Assocs. v. Texas American Energy Corp.*, 517 A.2d 658, 661 (Del. Ch. 1986) (where corporation has obtained NOBO list and is or will be using it to solicit stockholders, stockholder entitled to such list); *Bohrer v. International Banknote Co.*, 540 N.Y.S.2d 445, 446 (N.Y. App. Div. 1989) (because "record of shareholders" must be liberally construed to facilitate shareholder communication, shareholder entitled to NOBO list in corporation's possession at time of request and at any time after request but before annual meeting to elect board of directors). The record reveals that the defendant has not obtained a NOBO list. Accordingly, to the extent that any of the non-objecting beneficial owners have filed nominee certificates with the defendant, the defendant must disclose their names to the plaintiff. However, the non-objecting beneficial owners who have not filed nominee certificates with the defendant, if any, are not "shareholders" within the meaning of N.C.G.S. § 55-16-02(b)(3), and the defendant does not have an obligation to obtain and make available to the plaintiff a list of their names. Accordingly, we remand this aspect of the case to the trial court for a determination of whether there are any non-objecting beneficial owners who have filed nominee certificates with the defendant, and if so, for an order compelling the defendant to disclose their names to the plaintiff.

## II

## Accounting Records

[2] The defendant argues that the trial court erred in concluding that the plaintiff has a right to inspect the defendant's accounting records. We agree.

A corporation is required to "maintain appropriate accounting records," N.C.G.S. § 55-16-01(b), which, as a general rule, are subject to inspection under N.C.G.S. § 55-16-02(b)(2). This general rule, however, does not apply to the accounting records of a public corporation. North Carolina Gen. Stat. § 55-16-02(b) provides in part "that a shareholder of a public corporation shall not be entitled to inspect or copy any accounting records of the corporation . . . ." "Accounting records," although not defined by the Act, are generally defined as "[t]he formal journals and ledgers, and the vouchers, invoices, correspondence, contracts, and other sources

PARSONS v. JEFFERSON-PILOT CORP.

[106 N.C. App. 307 (1992)]

or support for such records . . . ." Kohler's Dictionary for Accountants 13-14 (W.W. Cooper & Y. Ijiri eds., 6th ed. 1983). In this case, the parties agree that the defendant is a public corporation. Accordingly, to the extent that the records demanded by the plaintiff are in fact "accounting records," the trial court erred in allowing the plaintiff to inspect them. The defendant argues that because the plaintiff referred to these records as accounting records, the plaintiff is not entitled to inspect them. We disagree. How a shareholder designates desired corporate records does not determine whether the shareholder is entitled to inspect them. Because we are unable to determine from this record whether these records are "accounting records," we remand this case to the trial court for new findings, conclusions, and an order on whether these records are in fact "accounting records."

The plaintiff argues and the trial court concluded, however, that irrespective of any statutory restriction on the inspection of accounting records, N.C.G.S. § 55-16-02(e)(2) preserves for her the common law right to inspect the defendant's accounting records. We disagree. We acknowledge that N.C.G.S. § 55-16-02(e)(2) preserves for a shareholder whatever rights of inspection exist at common law. N.C.G.S. § 55-16-02(e)(2) official comment 4 and North Carolina commentary. However, a shareholder's common law right to inspect the books and records of a corporation may be restricted by statute. *Cooke v. Outland*, 265 N.C. 601, 610, 144 S.E.2d 835, 841 (1965); *Carter v. Wilson Constr. Co.*, 83 N.C. App. 61, 64, 348 S.E.2d 830, 832 (1986). In N.C.G.S. § 55-16-02(b), the legislature specifically restricted a shareholder's right to inspect the accounting records of a public corporation. Accordingly, the plaintiff's common law right to inspect the defendant's accounting records is no greater than that granted by N.C.G.S. § 55-16-02(b).

III

Other Corporate Records

North Carolina Gen. Stat. § 55-16-02(c) provides that the plaintiff as a qualified shareholder may inspect and copy the records described in N.C.G.S. § 55-16-02(b) "only if" (1) she made her demand in "good faith and for a proper purpose," (2) she described her purpose and the desired records with "reasonable particularity," and (3) the records are "directly connected" with her purpose. The trial court concluded that the plaintiff had complied with N.C.G.S. § 55-16-02(c) in her written demand to inspect all records of final

PARSONS v. JEFFERSON-PILOT CORP.

[106 N.C. App. 307 (1992)]

action taken by the defendant's board of directors or by a committee of the board of directors, the minutes of any meeting of the shareholders, and the records of action taken by the shareholders without a meeting. The defendant does not argue that the trial court erred in concluding that the plaintiff had made her demand in good faith. The defendant argues, however, that the plaintiff failed to describe in her demand either her purpose or the desired records with reasonable particularity and furthermore that the desired records are not directly connected with her purpose.

[3] The records sought by the plaintiff pertinent to this issue are those described in paragraph 13 of her demand. This paragraph of her demand virtually mirrors N.C.G.S. § 55-16-02(b)(1) which allows inspection of the following:

> [r]ecords of any final action taken with or without a meeting by the board of directors, or by a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders and records of action taken by the shareholders without a meeting, *to the extent not subject to inspection under G.S. 55-16-02(a)* . . . .

*Id.* (emphases added). By its express language, N.C.G.S. § 55-16-02(c) applies only to the records described in N.C.G.S. § 55-16-02(b), not to those described in N.C.G.S. § 55-16-02(a). North Carolina Gen. Stat. § 55-16-02(a) provides that the plaintiff as a qualified shareholder may inspect and copy "any of the records of the corporation described in G.S. 55-16-01(e) . . . ." Included among the various records described in subsection (e) are "[t]he minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three years . . . ." N.C.G.S. § 55-16-01(e)(4). Therefore, the plaintiff was entitled to inspect the minutes of all shareholders' meetings for the three years preceding her demand and the records of all shareholder action taken without meetings for the three years preceding her demand, and her demand to inspect these records was not subject to the requirements of N.C.G.S. § 55-16-02(c). In compliance with N.C.G.S. § 55-16-02(a), the defendant allowed the plaintiff to inspect these records. Accordingly, we consider whether the plaintiff's demand for the records of final action taken by the board of directors or by a committee of the board of directors, the minutes of shareholders' meetings beyond the three years preceding her demand, and the records

of shareholder action taken without meetings also beyond the three years preceding her demand complied with the requirements of N.C.G.S. § 55-16-02(c).

## (A) Proper Purpose

[4] The plaintiff's stated purpose for demanding to inspect these records was to determine "any possible mismanagement of the Company or any possible misappropriation, misapplication or improper use of any property or asset of the Company . . . ." The traditional "proper purpose" language of N.C.G.S. § 55-16-02(c)(1) defines "the scope of the shareholder's right of inspection and its use ensures that the very substantial case law that has developed under it will continue to be applicable under the revised Act." N.C.G.S. § 55-16-02(c)(1) official comment 3; *see* N.C.G.S. § 55-38(b) (1982 & Supp. 1989) (proper purpose); *Cooke*, 265 N.C. at 611-12, 144 S.E.2d at 842-43; *Carter*, 83 N.C. App. at 64-65, 348 S.E.2d at 832. Prior appellate decisions of our courts have determined that a shareholder has a proper purpose when the shareholder desires to investigate the conduct of management where circumstances justify suspicion of mismanagement, *Cooke*, 265 N.C. at 611-12, 144 S.E.2d at 842, and when the shareholder desires to determine whether the corporation is being " 'efficiently and properly managed in the best interests of the corporation.' " *Carter*, 83 N.C. App. at 63, 348 S.E.2d at 831. In light of these prior decisions, the plaintiff's stated purpose is a proper one under N.C.G.S. § 55-16-02(c)(1).

## (B) Reasonably Particular Description

[5] The defendant argues that the plaintiff did not describe either her purpose or the desired records with reasonable particularity. We disagree. Whether the plaintiff described her purpose or the desired records with reasonable particularity depends upon the facts and circumstances of each case. By analogy to the "reasonable particularity" requirement of N.C.G.S. § 1A-1, Rule 34(b) (1990),

> the test must be a relative one, turning on the degree of knowledge that a movant in a particular case has about the documents he requests. In some cases he has such exact and definite knowledge that he can designate, identify, and enumerate with precision the documents to be produced. This is the ideal designation, since it permits the party responding to go at once to his files and without difficulty produce the

PARSONS v. JEFFERSON-PILOT CORP.

[106 N.C. App. 307 (1992)]

document for inspection. But the ideal is not always attainable and Rule 34 does not require the impossible. Even a generalized designation should be sufficient when the party seeking discovery cannot give a more particular description and the party from whom discovery is sought will have no difficulty in understanding what is wanted.

8 C. Wright & A. Miller, Federal Practice and Procedure § 2211 (1970). This test is consistent with the Official Comment to N.C.G.S. § 55-16-02(c)(2) which states that under the "reasonable particularity" requirement, a shareholder should make "more meaningful" designations of her purpose and the desired records when "feasible."

The record does not reveal that the plaintiff had any direct knowledge of mismanagement of the defendant or that she had any direct knowledge of improper use of corporate property at the time she made her demand of the defendant. The record shows only that she had knowledge of an alleged poor return on her investment with the defendant. In light of her apparent knowledge at the time of her demand, it would not have been feasible to state her purpose with any greater particularity. Accordingly, on these facts, the trial court properly determined that the plaintiff designated her purpose with reasonable particularity. Furthermore, she specifically described the desired records. She designated "all records of any final action taken" by the board of directors or by a committee of the board of directors, the "minutes of any meeting of the shareholders," and the "records of action taken by the shareholders of the Company without a meeting." Although her demand was extremely broad, there is nothing in this record to show that the plaintiff could have described the desired records with any greater particularity than she did, and the defendant should have had no trouble in understanding what the plaintiff desired. Accordingly, the trial court properly determined that the plaintiff had described the desired records with reasonable particularity.

### (C) Direct Connection

[6] The defendant argues that given the plaintiff's broad demand, many of the records within the scope of her request cannot be "directly connected" with her purpose. This argument has merit. It would appear that many of the desired records will have no connection to the plaintiff's proper purpose of determining mismanagement and improper use of corporate property. The plain-

**PARSONS v. JEFFERSON-PILOT CORP.**

[106 N.C. App. 307 (1992)]

tiff argues, however, that her designation was not overly broad because in her motion for a preliminary injunction, she limited her demand to records of action "taken during the last five years." We disagree. To determine whether a shareholder's *demand* meets the requirements of N.C.G.S. § 55-16-02(c), the trial court must focus upon the demand itself, not upon the shareholder's subsequent pleadings or motions filed in an attempt to compel inspection under N.C.G.S. § 55-16-04(b). Accordingly, we remand this aspect of the case to the trial court and order the trial court to conduct an *in camera* examination of the desired records to determine which records, if any, are directly connected with the plaintiff's purpose. N.C.G.S. § 55-16-02(c)(3) official comment 3. The plaintiff may thereafter inspect those documents which are directly connected with her purpose.

The plaintiff argues and the trial court concluded that even if the plaintiff's demand does not meet the requirements of N.C.G.S. § 55-16-02(c)(3), she nonetheless has a common law right of inspection protected by N.C.G.S. § 55-16-02(e)(2) which is not subject to the requirements of N.C.G.S. § 55-16-02(c). We disagree. As previously stated with regard to accounting records, N.C.G.S. § 55-16-02(e)(2) merely preserves for a shareholder whatever rights of inspection exist at common law. At common law, a shareholder's right to inspect corporate records is clearly subject to statutory restriction. *Cooke*, 265 N.C. at 610, 144 S.E.2d at 841; *Carter*, 83 N.C. App. at 64, 348 S.E.2d at 832. By enacting N.C.G.S. § 55-16-02(c), the legislature specifically restricted shareholder inspection rights thereby precluding impermissible "fishing expeditions" in corporate records. *See Cooke*, 265 N.C. at 611, 144 S.E.2d at 842 (neither common law nor N.C.G.S. § 55-38(b) allowed "fishing expeditions"); *Carter*, 83 N.C. App. at 64, 348 S.E.2d at 832 (neither common law nor N.C.G.S. § 55-38(b) allowed "fishing expeditions").

## IV

### Rule 11 Sanctions

[7] A pleading violates Rule 11 if (1) it is not well grounded in fact, (2) it is not warranted by existing law or by "a good faith argument for the extension, modification, or reversal of existing law," or (3) it is interposed for an improper purpose. We agree with the plaintiff that her complaint and motion met the factual and legal sufficiency prongs of Rule 11. We agree with the defend-

ant, however, that the trial court erred in concluding that the plaintiff did not file these documents for an improper purpose.

The trial court determined that because the plaintiff met both the factual and legal sufficiency prongs of Rule 11, her complaint and motion could not have been interposed for an improper purpose. This was a correct understanding of the law as it existed on the day the trial court entered its order. *Bryson v. Sullivan*, 102 N.C. App. 1, 11, 401 S.E.2d 645, 653 (1991). In *Bryson v. Sullivan*, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992), however, our Supreme Court held that "[t]he improper purpose prong of Rule 11 is separate and distinct from the factual and legal sufficiency requirements," and that therefore, a pleading which meets both the factual and legal sufficiency prongs of Rule 11 may nonetheless be interposed for an improper purpose. We presume that the *Bryson* decision applies retroactively, *State v. Rivens*, 299 N.C. 385, 390, 261 S.E.2d 867, 870 (1980), and therefore we remand this aspect of the case to the trial court for a determination on this record as to whether the plaintiff filed her complaint and motion for an improper purpose.

Accordingly, the trial court's order is

Affirmed in part, reversed in part, and remanded.

Judges JOHNSON and COZORT concur.