Technik v. Winwholesale Inc., 2012 NCBC 5.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

STEVEN A. TECHNIK,

             Plaintiff,

  v.

WINWHOLESALE INC., CHARLOTTE
WINNELSON CO., RONALD
BOHANNON and JOHN DOES 1-4,

             Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 15709

**ORDER AND OPINION**

*Richard H. Tomberlin for Plaintiff Steven A. Technik.*

*Womble Carlyle Sandridge & Rice, PLLC by Meredith J. McKee and John E. Pueschel, and Sebaly Shillito + Dyer by Toby J. Henderson for Defendants.*

Murphy, Judge.

{1}    **THIS MATTER** is before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint. Defendants argue that Plaintiff's Amended Complaint should be dismissed because it fails to: (1) follow the statutory requirements to bring a claim for a court-ordered inspection of corporate records; (2) allege any conduct that would result in a breach of fiduciary duty; (3) allege the existence of any contract necessary to bring a claim for breach of contract; or (4) allege any factual basis that would support a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

{2}    The issues for resolution by the Court have been fully and thoroughly briefed by the parties. The Court, therefore, decides the Motion without a hearing pursuant to Rule 15.4 of The General Rules of Practice and Procedure for the North Carolina Business Court.

{3}     Having considered the Amended Complaint, the Motion, and the briefs and submissions of the parties, the Court **GRANTS** Defendants' Motion to Dismiss in part and **DENIES** the Motion in part.

## I.

## PROCEDURAL HISTORY

{4}     On August 18, 2010, Plaintiff Steven Technik filed a Verified Complaint on behalf of Nominal Defendant Charlotte Winnelson Co. ("Charlotte Winnelson"), alleging direct and derivative claims against WinWholesale, Inc. ("WinWholesale"), Ronald Bohannon, and John Does 1-4 (collectively, "Defendants"). (Verified Compl. ¶¶ 46-74.) Plaintiff filed a Verified Amended Complaint on October 29, 2010. (Am. Compl. 16.)

{5}     This case was transferred to the North Carolina Business Court as a mandatory complex business case on September 20, 2010, and subsequently assigned to me. (Designation Order 1; Assignment Order 1.)

{6}     Defendants filed their Motion to Dismiss on December 1, 2010, to which, Plaintiff responded in opposition on December 21, 2010. Defendants replied on January 10, 2011. (Defs.' Mot. to Dismiss, Answer and Countercls. 15; Pl.'s Resp. to Defs. Mot. to Dismiss 10; Defs. Reply in Supp. of Mot. to Dismiss 10.)

## II.

## FINDINGS OF FACT

{7}     Charlotte Winnelson was organized under the laws of the State of Delaware on or about July 21, 1999 and has its principal place of business in Charlotte, North Carolina. (Am. Compl. ¶¶ 2, 12.)

{8}     Plaintiff alleges that Charlotte Winnelson is one of several interrelated wholesale distribution companies existing under the umbrella of Defendant WinWholesale and referred to as the "Win Group of Companies." (Am. Compl. ¶ 14.)

{9}     Each individual company of the "Win Group" is a separate corporation with its own shareholders, one of which serves as president and manages the day-to-day operations of the company. (Am. Compl. ¶ 15.)

{10}    Plaintiff was the original president of Charlotte Winnelson. (Am. Compl. ¶ 13.) At the time Plaintiff established Charlotte Winnelson, he invested approximately $35,000 in return for 30% of the company's shares, with the remaining shares distributed as follows: 30% – Myrtle Beach Winnelson, 5% – Mike Ward, 5% – Aubrey Bell, and 30% – WinWholesale. (Am. Compl. ¶ 19.)

{11}    At the time Plaintiff was negotiating his investment in Charlotte Winnelson, he alleges that it was represented to him that if he ever wanted to leave Charlotte Winnelson, or sell his shares, WinWholesale would buy the shares back using a "book value" set forth in annual reports at the time of his departure. (Am. Compl. ¶ 20.) The purchase price would also include a "premium in recognition of the 'growing concern' value of the shares . . . ." (Am. Compl. ¶ 20.)

{12}    Plaintiff contends that the buy-back policy represented to him at the formation of Charlotte Winnelson had been in place at WinWholesale and its predecessor, Primus, since the 1980's. (Am. Compl. ¶ 23.) Plaintiff alleges that sometime during 2001-2003, Primus amended the process for valuation and buy-back of shares within its standard Procedure Manual. (Am. Compl. ¶ 23.)

{13}    On or about May 30, 2007, WinWholesale entered into a "Voting Trust Agreement" with Myrtle Beach Winnelson that increased WinWholesale's interest in Charlotte Winnelson to just over 50%. (Am. Compl. ¶ 28; *see also* Pl.'s Am. Compl. Ex. D.)

{14}    After their acquisition of a majority stake in Charlotte Winnelson, WinWholesale asked Plaintiff to resign from his positions on the Board of Directors and as President of Charlotte Winnelson. (Am. Compl. ¶ 35.) Plaintiff refused to comply. (Am. Compl. ¶ 35.) The corporate resolutions by which WinWholesale purportedly accomplished Plaintiff's termination are each signed by WinWholesale's representative Bruce E. Anderson, and dated April 29, 2010, the day Plaintiff was asked to resign. (Am. Compl. ¶ 39; *see also* Pl.'s Am. Compl. Ex. E.)

## III.
## STANDARD OF REVIEW

{15} On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the question for the court is "'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.'" *Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (quoting *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).

{16} "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Id.* at 277-78, 540 S.E.2d at 419.

{17} In considering a motion to dismiss for failure to state a claim upon which relief can be granted, "'the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions are not admitted.'" *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 613, 646 S.E.2d 826, 837 (2007) (quoting *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).

## IV.
### ANALYSIS
### A.
### DEMAND FOR ACCOUNTING

{18} Pursuant to Section 55-16-04 of the North Carolina General Statutes, Plaintiff seeks to have the Court order "a full accounting of all records of Charlotte Winnelson . . . from January 1, 2007 through the date of this request . . . ." (Am. Compl. ¶ 52.)

{19} A shareholder is entitled to inspect and copy records of a corporation when the shareholder makes a written demand (1) in good faith and for a proper purpose, (2) describing with reasonable particularity the records he desires to inspect,[1] and (3) the requested records are directly connected to the stated purpose

---

[1] "Under the 'reasonable particularity' requirement, a shareholder should make more meaningful statements of purpose and the desired records when 'feasible.' Whether a

for inspection.[2]  N.C. Gen. Stat. § 55-16-02(c) (2010).  The written demand must be made "at least five business days before the date on which [the shareholder] wishes to inspect and copy."  N.C. Gen. Stat. § 55-16-02(b).

{20}    If, after making a qualifying written demand for inspection, the corporation refuses to allow the shareholder access to the requested records within a reasonable time, the shareholder may apply to the court for an order to permit copying and inspection of the records sought.  N.C. Gen. Stat. § 55-16-04(b) (2010).

{21}    Section 55-16-02(c)'s inspection requirements are conditions precedent to court-ordered inspection.  *See* N.C. Gen. Stat. § 55-16-04(b).

{22}    Although Plaintiff refers to a demand for records in his Amended Complaint, he does not allege that he made a qualifying demand under Section 55-16-02(b) and (c), or that the corporation refused such a demand.  (Am. Compl. ¶ 43.)

{23}    The Court's focus in addressing this claim is upon the demand itself. As amended, the Complaint is void of any allegations identifying the purpose of the request, alleging that it was made in good faith, showing that Plaintiff identified the requested documents with reasonable particularity, or claiming that Charlotte Winnelson refused to provide an opportunity for inspection.  Furthermore, the scope of Plaintiff's request is far too broad.  Plaintiff's request for "all records of Charlotte Winnelson, including . . . all shareholder records[,] . . . and all accounting records of the corporation," fails to correlate his demand to the purpose for inspection, or

---

shareholder has described his purpose or the desired records with reasonable particularity necessarily depends upon the facts and circumstances of each case."  *Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 429, 426 S.E.2d 685, 691 (1993).  The *Parson* court went on to find that when construing the reasonably particularity requirement of Section 55-16-02(c), it is helpful to consider the interpretation of the "reasonable particularity" requirement within Rule 34(b) of the Federal Rules of Civil Procedure.  Interpretations of Rule 34(b) have found that when determining whether the requirement has been met "the goal is that the designation be sufficient to apprise a man of ordinary intelligence what documents are required."  8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2211, at 628-31 (1970).

[2] "To determine whether a shareholder's *demand* meets the requirements of N.C.G.S. § 55-16-02(c), the trial court must focus upon the demand itself, not upon the shareholder's subsequent pleadings or motions filed in an attempt to compel inspection under N.C.G.S. § 55-16-04(b)."  *Parsons v. Jefferson-Pilot Corp.*, 106 N.C. App. 307, 323, 416 S.E.2d 914, 923 (1992), aff'd in part and rev'd in part, 333 N.C. 420, 426 S.E.2d 685 (1993).

provide sufficient guidance so that a person of ordinary intelligence would know what documents were being requested. (Am. Compl. ¶ 52.)

{24}    Absent a written demand that meets the statutory requirements of Section 55-16-02, Plaintiff's request for a court order to inspect corporate documents is not ripe for determination. For the reasons given, the Court hereby **GRANTS** Defendants' Motion to Dismiss with respect to this claim.

## B.

## BREACH OF FIDUCIARY DUTY

### 1.

### CHOICE OF LAW

{25}    "Under North Carolina law, if a derivative claim is asserted against a foreign corporation[,] the courts of this state look to the laws of the state in which the company is incorporated to determine the procedural prerequisites and whether the claim is derivative or individual." *Maurer v. SlickEdit, Inc.*, 2005 NCBC 1 ¶ 26 (N.C. Super. Ct. May 16, 2005) http://www.ncbusinesscourt.net/opinions/2005%20 NCBC%201.htm; *see also* N.C. Gen. Stat. § 55-7-47 (2010). Charlotte Winnelson is incorporated under the laws of the state of Delaware, thus Delaware law applies to Plaintiff's derivative claims and provides the basis for determining which of Plaintiff's claims are derivative or direct. (Am. Compl. ¶ 2.)

{26}    Under Delaware law, "[t]o determine whether [plaintiff] states a derivative or an individual cause of action, [the Court] must look to the nature of the wrongs alleged in the complaint rather than plaintiff's designations or stated intention." *Weinberger v. Lorenzo*, 1990 Del. Ch. LEXIS 169, at *6 (October 11, 1990). When reviewing the complaint, a court must ask two questions: (1) "Who suffered the alleged harm and [(2)] who would receive the benefit of any recovery or other remedy?" *Feldman v. Cutaia*, 951 A.2d 727, 732 (Del. 2007) (quoting *Tooley v. Davidson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)).

> If the corporation alone, rather than the individual stockholder, suffered the alleged harm, the corporation alone is entitled to recover, and the claim . . . is derivative. Conversely, if the stockholder suffered

harm independent of any injury to the corporation that would entitle him to an individualized recovery, the cause of action is direct.

*Id.*

{27} The *Feldman* court went on to say:

Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature. The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct . . . . In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.

*Id.* at 733. While the distinction between derivative and direct claims is important when evaluating the sufficiency of the pleadings, it is entirely possible "[u]nder Delaware law, . . . for the same set of facts to generate both a direct claim and a derivative claim." *MCG Capital Corp. v. Maginn*, 2010 Del. Ch. LEXIS 87, at *47 (Del. Ch. May 5, 2010) (citing *Gentile v. Rossette*, 906 A.2d 91, 100 n.19 (Del. 2006)).

{28} Count II of Plaintiff's Amended Complaint (Breach of Fiduciary Duties) appears to be an olio of allegations describing conduct that gives rise to both direct and derivative claims. Plaintiff alleges that Charlotte Winnelson's Board of Directors was under the complete domination of WinWholesale and, accordingly, WinWholsale "owed fiduciary duties of good faith, loyalty and due care to Charlotte Winnelson and the members of Charlotte Winnelson, including [Plaintiff]." (Am. Compl. ¶ 56.) In addition, Plaintiff argues that WinWholesale owed fiduciary duties to Charlotte Winnelson, its minority shareholders, and Plaintiff because of its status as a majority shareholder. (Am. Compl. ¶ 57.) Lastly, Plaintiff alleges that his termination as President, and removal as a Member of the Board of Directors, was not approved by Charlotte Winnelson's Board of Directors, and that he was "excluded from . . . [subsequent] Board [and] shareholder meetings." (Am. Compl. ¶¶ 40, 44.)

{29}     Plaintiff's allegations concerning WinWholesale's acquisition of a majority stake in Charlotte Winnelson, WinWholesale's domination and control over Charlotte Winnelson, Plaintiff's termination as President and CEO, WinWholesale's mismanagement of the transition from Plaintiff to his successor, Defendant Bohannon's breach of fiduciary duties to Charlotte Winnelson, and the drop in Charlotte Winnelson's share value suggest that Charlotte Winnelson and its shareholders were owed fiduciary duties by WinWholesale and/or Bohannon, that both Charlotte Winnelson and each shareholder suffered harm, and that both Charlotte Winnelson and its shareholders would benefit from any potential recovery.  Plaintiff does not claim that he suffered individualized harm because he was owed the same duties as any other shareholder and, under *Feldman*, would be entitled to recover in pro rata proportion.  Accordingly, Plaintiff's claims based on the duties of WinWholesale and Brohannon to Charlotte Winnelson and its shareholders are derivative in nature. *See Tooley*, 845 A.2d at 1033.

{30}     On the other hand, Plaintiff's allegations that he was excluded from shareholder meetings indicate that he was prevented from exercising his right to vote as a shareholder.  If true, under *Tooley*, Defendants' actions would constitute violations of individual shareholder rights, cause harm to Plaintiff individually, and only be recoverable by Plaintiff.  Accordingly, these allegations constitute direct claims. *Id.*

## 2.
### Derivative Claims

{31}     The presence of both direct and derivative claims within Count II of Plaintiff's Amended Complaint requires the Court to look at each independently. With regard to Plaintiff's derivative claims, in addition to the pleading requirements listed above, under both Delaware and North Carolina law, in order "to survive a motion to dismiss, 'a plaintiff must allege well pleaded facts to overcome the presumption [of the business judgment rule].'" *Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1246 (Del. 1999); *accord Green v. Condra*, 2009 NCBC 21 ¶ 96

(N.C. Super. Ct. August 14, 2009), http://www.ncbusinesscourt.net/opinions/2009 _NCBC_21.pdf.

{32}    The business judgment rule is "'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Gantler v. Stephens*, 965 A.2d 695, 705-06 (Del. 2009) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)); *accord Green*, 2009 NCBC 21 ¶ 94.  At a minimum, "to overcome the presumption of the business judgment rule, the burden is on the plaintiff to show the defendant directors failed to act (1) in good faith, (2) in the honest belief that the action taken was in the best interest of the company or (3) on an informed basis." *Krim v. Pronet*, 744 A.2d 523, 527 (Del. Ch. 1999); *accord Winters v. First Union Corp.*, 2001 NCBC 08 ¶ 17 (N.C. Super. Ct. August 14, 2001), http://www.ncbusinesscourt.net/opinions/2001%20 NCBC%2008.htm (stating that the board's decisions will be entitled to a presumption of reasonableness unless Plaintiff makes "specific allegations of bad faith or inattentiveness.").

{33}    The Amended Complaint alleges that: (1) WinWholesale wanted a controlling interest in Charlotte Winnelson; (2) WinWholesale obtained this interest, unbeknownst to Plaintiff, by entering into a voting trust with another shareholder; (3) Plaintiff's termination from his position as President of Charlotte Winnelson was done in bad faith and was not in the best interest of Charlotte Winnelson; (4) the transition from Plaintiff to the new president was mismanaged; and (5) the above mentioned decisions caused Charlotte Winnelson to lose value. (Am. Compl. ¶¶ 24, 28, 34-49.)

{34}    The allegations listed above do not constitute specific facts supporting Plaintiff's conclusory allegations that Defendants' actions were "not done in good faith." (Am. Compl. ¶ 49.)  Generally, Plaintiff's allegations are that WinWholesale wanted a controlling interest in Charlotte Winnelson, obtained it through a voting agreement, fired Plaintiff, and mismanaged the transition from Plaintiff to his successor resulting in a loss in value to Charlotte Winnelson.  While Plaintiff summarily states that this was done in bad faith, except for the mismanagement

assertion, generally what Plaintiff describes is in fact routine conduct for directors engaged in fundamental business decision making.  None of the facts alleged by Plaintiff support his assertion that the Board of Directors acted in bad faith, on an uninformed basis, or without the best interests of the company in mind.  Accordingly, Plaintiff's derivative claims for breach of fiduciary duty fail to overcome the business judgment rule and should be dismissed.

## 3.
### Direct Claims

{35}    Unlike derivative claims, direct claims do not implicate the business judgment rule.  When assessing whether a direct claim has met the pleading requirements of 12(b)(6), "[t]he complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block*, at 277-78, 540 S.E.2d at 419.  Here, Plaintiff alleges that after his termination, while still a shareholder, he was "excluded from . . . Board . . . [and] shareholder meetings." (Am. Compl. ¶ 44.)  Plaintiff's allegations that Defendants prevented him from exercising his shareholder right to vote sufficiently allege harms to his voting rights as a shareholder.  Accordingly, the Complaint states a claim for which relief can be granted. *See Tooley*, 845 A.2d at 1033; *see also Grayson v. Imagination Station, Inc.*, 2010 Del. Ch. LEXIS 169 at *14 (Del. Ch. Aug. 16, 2010).

{36}    For these reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss in part as to Plaintiff's derivative based claim for breach of fiduciary duties, and **DENIES** Defendants' Motion to Dismiss with respect to Plaintiff's direct claim.

### C.
### BREACH OF CONTRACT

{37}    "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 25, 530 S.E.2d 838, 843 (2000) (internal citations omitted).

{38} The elements of a valid contract are "offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Media Network, Inc. v. Mullen Adver., Inc.*, 2007 NCBC 01 ¶ 65 (N.C. Super. Ct. Jan. 19, 2007), http://www.ncbusinesscourt.net/opinions/2007%20NCBC%201.pdf (citing *Cap Care Group, Inc. v. McDonald*, 149 N.C. App. 817, 822, 561 S.E.2d 578, 582 (2002)).

{39} The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds. *See Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 11, 161 S.E. 2d 453, 462 (1968). In North Carolina, "the parties 'must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement.'" *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) (quoting *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 220, 108 S.E. 735, 737 (1921)). "A party may not enforce a purported contract that omits the 'nature and extent of the service to be performed, the place where, and the person to whom it is to be rendered, and the compensation to be paid.'" *Media Network, Inc.*, 2007 NCBC 01 ¶ 74.

{40} The Amended Complaint alleges that when Plaintiff was considering investing in Charlotte Winnelson in 1999, representations were made to him that if he were ever to leave Charlotte Winnelson, or want to sell his shares:

> WinWholesale would immediately buy back the shares using the 'book value' of the shares at the time he left the company as a basis for determining their value, which would include a premium in recognition of the 'going concern' value of the shares – e.g., that the selling shareholder would not only be giving up his or her interest in the current value of the assets of the company, but also the right to receive future profits and dividend checks.

(Am. Compl. ¶ 20.)

{41} The Amended Complaint goes on to allege that, after Plaintiff's investment, the company policy of repurchasing shares was reflected in comments made by WinWholesale's President in *The Spirit*, a WinWholesale corporate publication, and that this policy had been in place since at least 1980, but was not

formalized until 2001-2003 when shareholders were notified of the modifications. (Am.Compl. ¶¶ 21-23.)

{42}   While Plaintiff does allege that someone made representations to him about a share buy-back program, nothing in the Amended Complaint specifically alleges who made the representations, what position the speaker held, or whether that person was authorized to bind Defendants in a contract negotiation.  Even if the Court were to accept that the person who made the representations to Plaintiff was an agent of WinWholesale, the contract, as pled, would be unenforceable for lack of mutual assent.

{43}   Here, Plaintiff has alleged that, under the purported contract, the value of his shares would be calculated using the "book value," and that he would receive a "premium," to compensate him for "the 'going concern' value of the shares," and loss of right to future profits and dividend checks.  (Am. Compl. ¶ 20.)  While the Court might be able to find that the "book value" could be calculated by assessing the current value of the assets of the company divided by the number of shares issued, there are no allegations in the Amended Complaint that detail the parties' agreement on how the "premium" would be determined.  (Am. Compl. ¶ 20.)  The omission of how compensation was to be paid, under North Carolina law, renders the contract unenforceable. *See Media Network, Inc.*, 2007 NCBC 01 ¶ 74 (dismissing a claim for breach of contract where the number, location, and date of advertisement postings was not agreed to by the parties).

{44}   Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss with respect to this claim.

### D.
### UNFAIR AND DECEPTIVE TRADE PRACTICES

{45}   "To establish a *prima facie* claim for unfair trade practices, the defendants must show: (1) plaintiff committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, . . . and (3) the act proximately caused injury to defendants." *Gress v. Rowboat Co.*, 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (citing *Pleasant Valley Promenade v. Lechmere,*

*Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995)); *see also* N.C. Gen. Stat. § 75-1.1(a) (2010).

{46} "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citing *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). "The determination as to whether an act is unfair or deceptive is a question of law for the court." *Id.* (citing *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000)).

{47} "[E]mployer-employee relationships do not fall within the intended scope of [the Unfair and Deceptive Trade Practices Act ("UDTPA")]." *Buie v. Daniel International*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-20 (1982), *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982). Moreover, "'actions for unfair or deceptive trade practices are distinct from actions for breach of contract . . . .' Thus, [a] 'plaintiff must show substantial aggravating circumstances attending [a] breach [of contract] to recover under the [UDTPA].'" *Watson Elec. Constr. Co. v. Summit Cos., LLC*, 160 N.C. App. 647, 657, 587 S.E.2d 87, 95 (2003) (quoting *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367-68, 533 S.E.2d 827, 832-33 (2000)).

{48} The North Carolina Supreme Court has held:

> [T]he [North Carolina] General Assembly did not intend for the [UDTPA's] protections to extend to a business's internal operations. As we determined in *HAJMM Co.* and *Dalton,* the [UDTPA] is not focused on the internal conduct of individuals within a single market participant, that is, within a single business. To the contrary, as we observed in *Bhatti* and *Sara Lee,* the General Assembly intended the [UDTPA's] provisions to apply to interactions between market participants. As a result, any unfair or deceptive conduct contained solely within a single business is not covered by the [UDTPA].

*White v. Thompson*, 364 N.C. 47, 53, 691 S.E.2d 676, 680 (2010).

{49} Plaintiff has failed to make sufficient allegations in his Amended Compliant of unfair or deceptive practices. While Plaintiff directs the Court to allegations of conspiracy and an unfair take-over of the company, those allegations

are conclusory and the Amended Complaint does not provide facts to support Plaintiff's assertions.  Accordingly, Plaintiff has failed to meet the first requirement of the UDTPA.  *See* N.C. Gen. Stat. § 75-1.1(a) (2011).

{50}　Even if the Court concluded that Plaintiff had sufficiently alleged unfair or deceptive acts, the Amended Complaint does not allege actions that affect commerce.  This case centers on Plaintiff's termination as president of Charlotte Winnelson and the alleged failure of Defendants to honor a buy-back arrangement reached when Plaintiff initially invested in Charlotte Winnelson.  As was the case in *Maurer v. SlickEdit, Inc.*, here Plaintiff's claims only "attempt to create liability for matters of the internal operations of a corporation [and] . . . relate to the internal corporate affairs of [Charlotte Winnelson]."  *Maurer*, 2005 NCBC 1 ¶ 40.  Because the matters herein involve internal governance rather than extramural commerce, the Court concludes as a matter of law that the actions in question were not in or affecting commerce.  As such, Plaintiff's Complaint fails to allege sufficient facts to support a cause of action for violation of the UDTPA.

{51}　The Court, therefore, **GRANTS** Defendants' Motion to Dismiss with respect to this claim.

IV.

CONCLUSION

{52}　The Court **GRANTS** Defendants' Motion to Dismiss with respect to Count One (Demand for Accounting), Count Three (Breach of Contract) and Count Four (Unfair and Deceptive Trade Practices); and **GRANTS** Defendants' Motion to Dismiss, in part, as to Plaintiff's derivative claims for Breach of Fiduciary Duty, and **DENIES** Defendants' Motion to Dismiss with respect to Plaintiff's direct claims for Breach of Fiduciary Duty.

{53}　Wherefore, the Court hereby **DISMISSES** Plaintiff's claim for Demand for Accounting, without prejudice; **DISMISSES** Plaintiff's claims for Breach of Contract and Unfair and Deceptive Trade Practices, with prejudice, and **DISMISSES** Plaintiff's derivative claims for Breach of Fiduciary Duty, with prejudice.

**SO ORDERED**, this the 13th day of January, 2012.