Sharman v. Fortran Corp., 2018 NCBC 27.

STATE OF NORTH CAROLINA

CATAWBA COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 2669

DONNA SHARMAN; PETER
SHARMAN; JAMES TEMPLETON;
DOUGLAS MILLER; SHERRY
MILLER; PHILIP MILLER;
CHARLES MILLER;
CHRISTOPHER SHARMAN;
PEGGY TEMPLETON; WILLIAM
GWYNN; DAYNE MILLER; JAMES
TEN KATE; GLENN WITHERS; and
BRETT BERTOLAMI,

        Plaintiffs,

v.

FORTRAN CORPORATION,

        Defendant.

**ORDER AND FINAL JUDGMENT**

1.    **THIS MATTER** is before the Court upon Plaintiffs Donna Sharman, Peter Sharman, James Templeton, Douglas Miller, Sherry Miller, Philip Miller, Charles Miller, Christopher Sharman, Peggy Templeton, William Gwynn, Dayne Miller, James Ten Kate, Glenn Withers, and Brett Bertolami's ("Plaintiffs") request to inspect and copy Defendant Fortran Corporation's ("Defendant," "Fortran," or "the Company") corporate records (the "Requests") in the above-captioned case.

2.    The Court, having considered the Requests, the pleadings, the briefs in support of and in opposition to the Requests, the testimony and arguments advanced at the March 20, 2018 hearing on the Requests, the materials submitted in support of and in opposition to the Requests, and other appropriate matters of record, **GRANTS in part** and **DENIES in part** the Requests and **ENTERS FINAL JUDGMENT** in this action as set forth below.

*Troutman Sanders, LLP, by Sara S. Ash, for Plaintiffs Donna Sharman, Peter Sharman, James Templeton, Douglas Miller, Sherry Miller, Philip Miller, Charles Miller, Christopher Sharman, Peggy Templeton, William Gwynn, Dayne Miller, James Ten Kate, Glenn Withers, and Brett Bertolami.*

*Hendrick Bryant Nerhood Sanders & Otis LLP, by Matthew H. Bryant, for Defendant Fortran Corporation.*

I.

PROCEDURAL BACKGROUND

3. Plaintiffs filed their Complaint on September 21, 2017 seeking inspection and copying of corporate records pursuant to N.C. Gen. Stat. § 55-16-01, *et seq.* as their sole claim for relief. The Complaint alleges that the Plaintiffs are qualified shareholders under N.C. Gen. Stat. § 55-16-02(g) and, as such, are entitled to "a complete accounting of the finances and business affairs of Fortran[.]" (Compl. ¶¶ 34–35, ECF No. 3.)

4. The North Carolina General Statutes require the Court to dispose of the Requests "on an expedited basis." N.C. Gen. Stat. § 55-16-04(b). As a result, promptly after the issues were joined, the Court held a status conference with counsel on December 18, 2017 to discuss whether Plaintiffs' inspection rights, and Fortran's compliance with its statutory obligations, remained in dispute. Upon the parties' representations that a case and controversy continued to exist, the Court scheduled a hearing on the matter and established a briefing schedule. (Order 2–3, ECF No. 15.) After a continuance for good cause, the Court held an evidentiary hearing on

March 20, 2018 ("March 20 hearing"), at which counsel for Plaintiffs was present.[1] During the hearing, the Court received live testimony from Plaintiff James Templeton ("Templeton").

5.       The Requests are now ripe for determination.

II.

FINDINGS OF FACT

6.       Fortran is a corporation organized under the laws of the State of North Carolina with its principal place of business in Conover, Catawba County, North Carolina.  (Compl. ¶ 15.)[2]  Fortran's shares are listed for trading on the over-the-counter ("OTC") markets.  (Def.'s Statement Regarding Matters in Controversy 1 [hereinafter "Def.'s Statement"], ECF No. 23.)

7.       Plaintiffs are shareholders of Fortran.  (Compl. ¶ 18.)  The evidence offered at the hearing establishes that Templeton has held approximately 1.3 million shares of Fortran stock at all times since 2013 and that each of the other Plaintiffs—except Plaintiff Brett Bertolami ("Bertolami")—have been shareholders of Fortran since at least 2014.[3]

---

[1]  Defendant's counsel submitted statements in opposition to the Requests but advised the Court on March 19, 2018 that Defendant had requested that he not appear at the March 20, 2018 hearing on the Motion due to cost concerns.  Thus, Defendant's counsel did not appear at the March 20 hearing.

[2] Factual findings derived from the Complaint are allegations that Defendant admitted in its Answer.  (*See generally* Answer, ECF No. 12.)

[3]   The only evidence before the Court concerning Bertolami's shareholder status is Templeton's testimony that Bertolami was promised shares in Fortran for work he performed but that the shares were never issued.  Accordingly, the Court does not find as a fact on this record that Bertolami was a shareholder of Fortran.

8.     Plaintiffs allege that Fortran's chief executive officer and chairman, Douglas Rink ("Rink"), has engaged in "mismanaging Fortran and misappropriating, misapplying, and improperly using Fortran's property and assets[.]" (Compl. ¶ 20.) Plaintiffs specifically claim, among other things, that Rink used Fortran's funds or assets for his own benefit, issued common and preferred shares to himself without shareholder approval, failed to pay Fortran's debts when they were due and owing, failed to conduct necessary audits, and failed to hold any board or shareholder meetings. (Compl. ¶¶ 21–22.)

9.     To investigate Rink's alleged wrongdoing, Plaintiffs sent a shareholder inspection demand (the "Inspection Demand") to Rink and Fortran's chief financial officer, Richard Wilson ("Wilson"), on July 19, 2017, requesting to inspect various Fortran corporate records on July 26, 2017. (Compl. Ex. A.) Plaintiffs allege that they sent the Inspection Demand for "the purpose of enabling Plaintiffs to determine whether any improper transactions have occurred and to determine any possible mismanagement of Fortran or any possible misappropriation, misapplication, or improper use of any property or asset of Fortran." (Compl. ¶ 25.)

10.     The Inspection Demand, which is attached as Exhibit A to the Complaint, requested the right to inspect the following records:

1. Fortran's current bylaws and articles of incorporation, including any amendments;

2. All resolutions adopted by Fortran's board of directors relating to the issuance of common and preferred stock;

3. Minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three years;

4. All written communications to shareholders generally within the past three years and the financial statements required to be made available to the shareholders for the past three years;

5. All records relating to any board action taken regarding the merger of New Telephone Company and Burke Mills into Fortran;

6. All records relating to any board action regarding the acquisition of CCI Communications;

7. All records relating to any board action regarding the acquisition of Wyncom;

8. All records relating to any board action regarding the acquisition of Tower Performance Inc.;

9. All records relating to any board action taken regarding the election of officers and directors at Fortran;

10. All records relating to any board action regarding Fortran's borrowing of funds, including but not limited to the borrowing of funds from TCA Global Fund (FL), Peoples Bank of Newton, NC, BB&T Bank, and James M. Templeton;

11. All records relating to any board action regarding the issuance of new Fortran common and preferred stock, including but not limited to the issuance of preferred shares to Douglas W. Rink and Richard W. Wilson;

12. All records relating to Douglas W. Rink's use of Fortran's funds or assets for his personal use or benefit;

13. All accounting records and financial statements of Fortran, including but not limited to balance sheets, general ledgers, income/profit and loss statements and cash flow statements;

14. All UCC filings related to Fortran, including documents and communications relating to those filings;

15. A complete record or list of Fortran's shareholders, showing the name and address of each such shareholder, and transfer sheets reflecting changes in the names and addresses of Fortran's shareholders and/or changes in the number of shares owned by each shareholder; and

16. All records relating to the purchase, finance and ownership of the property located at 3210 16th Avenue SE, Conover, NC 28613.

(Compl. Ex. A, at 1–3 (listing Requests 1–16); *see also* Compl. ¶ 24 (a)–(p).)

11. Defendant refused to give Plaintiffs "the opportunity to inspect any of the Company's records[.]" (Compl. Ex. B, at 1.) In response, on August 29, 2017, Plaintiffs sent their Inspection Demand to Defendant again. (Compl. Ex. B., at 1.)

12. Defendant has produced a portion of the records requested in the Inspection Demand but has failed to fully comply with any of the Requests, with the exceptions of Request 1—which seeks Fortran's bylaws and articles of incorporation—and, as discussed further below, Request 4—which concerns Fortran's financial statements.

III.

CONCLUSIONS OF LAW

13. Because Fortran is a North Carolina corporation, the North Carolina Business Corporation Act (the "Act"), which is codified at Chapter 55 of the North Carolina General Statutes, applies to this proceeding.

14. The Act provides certain inspection rights to qualified shareholders. A qualified shareholder is a "person who shall have been a shareholder in the corporation for at least six months immediately preceding his demand or who shall be the holder of at least five percent (5%) of the corporation's outstanding shares of any class." N.C. Gen. Stat. § 55-16-02(g).

15. Based on the evidence presented, the Court finds that, other than Bertolami, each Plaintiff has been a shareholder of Fortran since at least 2014 and thus was a shareholder in the corporation for at least six months immediately preceding the

Inspection Demand. As a result, the Court concludes that each Plaintiff, other than Bertolami, is a qualified shareholder under section 55-16-02(g) (hereinafter the "Qualified Plaintiffs").

16. The Act grants qualified shareholders rights of inspection in two "separate and distinct categories." Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 10.01 (7th ed. 2017). N.C. Gen. Stat. § 55-16-02(a) grants what are generally referred to as "absolute rights" of inspection, and section 55-16-02(b) grants what are generally described as "qualified rights" of inspection. *Id.* The Court considers each in turn.

A. Absolute Rights of Inspection

17. N.C. Gen. Stat. § 55-16-02(a) provides qualified shareholders with an absolute right to inspect and copy certain corporate records:

> A qualified shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in G.S. 55-16-01(e) if he gives the corporation written notice of his demand at least five business days before the date on which he wishes to inspect and copy.

N.C. Gen. Stat. § 55-16-02(a). The records described in section 55-16-01(e) include the following:

> (1) [The corporation's] articles or restated articles of incorporation and all amendments to them currently in effect;
>
> (2) [The corporation's] bylaws or restated bylaws and all amendments to them currently in effect;
>
> (3) Resolutions adopted by [the corporation's] board of directors creating one or more classes or series of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding;

(4) The minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three years;

(5) All written communications to shareholders generally within the past three years and the financial statements required to be made available to the shareholders for the past three years under G.S. 55-16-20;[4]

(6) A list of the names and business addresses of [the corporation's] current directors and officers; and

(7) [The corporation's] most recent annual report delivered as required by G.S. 55-16-22.

N.C. Gen. Stat. § 55-16-01(e).

18. As discussed above, the Qualified Plaintiffs are qualified shareholders under section 55-16-02(g). The Qualified Plaintiffs have demanded inspection of the documents described in sections 55-16-01(e)(1)–(5). (*See* Compl. Ex. A, at 1–2 (Requests 1–4).) It is undisputed that Fortran received notice of the Qualified Plaintiffs' Inspection Demand within five days of the date of the requested inspection as required under section 55-16-02(a). (Compl. Ex. A, at 1.) Fortran has not challenged the Qualified Plaintiffs' right to inspect and copy each of these records. (*See* Answer 3.)

19. The evidence of record shows that Defendant has produced (i) its bylaws and articles of incorporation, (ii) a one-page, illegible document addressed to shareholders, (iii) certain interim and annual consolidated financial statements, (iv)

---

[4] N.C. Gen. Stat. § 55-16-20 provides that a North Carolina corporation must "make available to its shareholders annual financial statements . . . that include a balance sheet as of the end of the fiscal year, an income statement for that year, and a statement of cash flows for the year unless that information appears elsewhere in the financial statements."

certain UCC filings, (v) certain documents relating to stock issuance, and (vi) a link to a website containing certain letters to shareholders. Based on the evidence presented, however, it appears to the Court that Fortran has not produced all documents responsive to Request 2 (resolutions adopted by Fortran's board relating to the issuance of common and preferred stock) or Request 3 (minutes of shareholders' meetings and records of action taken by shareholders without a meeting, for the past three years). These Requests conform to the documents described in sections 55-16-01(e)(3) and (4), respectively, and the Court will therefore require Fortran to make all documents responsive to Requests 2 and 3 available for inspection and copying.

20. As to Request 4, however, the evidence shows that Fortran has provided consolidated interim and final quarterly and annual financial statements of the sort contemplated under section 55-16-20 through links to the otcmarkets.com website since at least April 30, 2013.[5] Annual financial statements are currently available on the website for the periods ending June 30, 2013 (filed November 13, 2013), June 30, 2014 (filed October 6, 2014), June 30, 2015 (filed September 9, 2015), June 30, 2016 (filed September 22, 2016), and June 30, 2017 (filed September 28, 2017).

21. The Qualified Plaintiffs acknowledge that Fortran has produced "certain interim and annual consolidated financial statements" but complain that the Company has failed to comply with its obligations under section 55-16-02(a) because the Company did not "produce any standalone financial statements of its subsidiaries." (Pls.' Statement Supp. Inspection Demand 8, ECF No. 22.) Section 55-

---

[5] www.otcmarkets.com/stock/FRTN/disclosure.

16-20(a) provides, however, that the financial statements that must be made available to shareholders "*may* be consolidated or combined statements of the corporation and one or more of its subsidiaries, as appropriate." N.C. Gen. Stat. § 55-16-20(a) (emphasis added). Accordingly, the Court concludes that Fortran was within its rights under section 55-16-02(a) to produce consolidated financial statements and was not required to provide the Qualified Plaintiffs with standalone financial statements of Fortran's subsidiaries. The Court thus finds that Fortran has complied with Request 4 to the extent it relates to the Company's financial statements.

22. Request 4 also seeks "all written communications to shareholders generally within the past three years[,]" as provided in section 55-16-01(e)(5). (Compl. Ex. A, at 2; Compl. ¶ 24(d).) It appears to the Court that at least some of these communications are available on the otcmarkets.com website, but the evidence of record is not clear that all such communications may be found there. Thus, the Court will require Fortran to make available all such written communications to the extent that it has not already done so.

B. Qualified Rights of Inspection

23. N.C. Gen. Stat. § 55-16-02(b) provides a qualified shareholder the right to inspect and copy certain records in addition to those listed in § 55-16-01(e) if (1) "[the qualified shareholder's] demand is made in good faith and for a proper purpose," (2) "[the qualified shareholder] describes with reasonable particularity his purpose and the records he desires to inspect," and (3) "[t]he records are directly connected with

[the qualified shareholder's] purpose." N.C. Gen. Stat. § 55-16-02(c). These additional records include:

> (1) Records of any final action taken with or without a meeting by the board of directors, or by a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders and records of action taken by the shareholders without a meeting, to the extent not subject to inspection under G.S. 55-16-02(a);
>
> (2) Accounting records of the corporation; and
>
> (3) The record of shareholders;
>
> provided that a shareholder of a public corporation shall not be entitled to inspect or copy any accounting records of the corporation or any records of the corporation with respect to any matter which the corporation determines in good faith may, if disclosed, adversely affect the corporation in the conduct of its business or may constitute material nonpublic information at the time the shareholder's notice of demand to inspect and copy is received by the corporation.

N.C. Gen. Stat. § 55-16-02(b).

24. The Qualified Plaintiffs contend that the records they seek in Requests 5–16 of their Inspection Demand fall within these three categories. The Court will examine each of these Requests for compliance with the requirements of sections 55-16-02(b) and (c).

## 1. Good Faith and Proper Purpose

25. The Official Comments to Chapter 55 provide useful guidance in determining whether a qualified shareholder has stated a "proper purpose" to support an inspection demand. *See, e.g.*, *Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 425, 426 S.E.2d 685, 689 (1993) ("[T]he commentary to a statutory provision can be helpful in some cases in discerning legislative intent."); *see also Miller v. First Bank*, 206 N.C.

App. 166, 171, 696 S.E.2d 824, 827–28 (2010) (holding that although Official Comments are not binding because they are not enacted into law, "they were included with the printing of the statute and are, therefore, relevant in construing the intent of the statute"). The relevant Comments here explain that "[a] 'proper purpose' means a purpose that is reasonably relevant to the demanding shareholder's interest as a shareholder." N.C. Gen. Stat. § 55-16-02 Official Comment 3. The Comments further advise that "[a]s a practical matter, a shareholder who alleges a purpose in general terms, such as . . . to determine whether improper transactions have occurred, has been held to allege a 'proper purpose.'" *Id.* Once a proper purpose is alleged, our courts have held that "[t]he burden of proof rests upon [the corporation], if [it] wish[es] to defeat the shareholder's demand, to allege and show by facts, if [it] can, that the shareholder is motivated by some improper purpose." *Carter v. Wilson Constr. Co.*, 83 N.C. App. 61, 65, 348 S.E.2d 830, 832 (1986).

26. Here, the Qualified Plaintiffs allege that they made their Inspection Demand to determine whether "any improper transactions have occurred and to determine any possible mismanagement of Fortran or any possible misappropriation, misapplication, or improper use of any property or asset of Fortran." (Compl. ¶ 25.) Such a motive constitutes a proper purpose under Chapter 55. *See, e.g.*, *Parsons*, 333 N.C. at 428–430, 426 S.E.2d at 691–92 (holding that a proper purpose could include "determining any possible mismanagement of the Company or any possible misappropriation, misapplication or improper use of any property or asset of the Company"); *Carter*, 83 N.C. App. at 65, 348 S.E.2d at 832 ("the shareholder's good

faith desire to . . . investigate the conduct of the management" is a proper purpose supporting a demand for corporate records).

27. Since the Qualified Plaintiffs have stated a proper purpose in their Complaint, Defendant can overcome the presumption of good faith in favor of the Qualified Plaintiffs' Requests only by carrying its burden to show that the Qualified Plaintiffs' purpose is improper. *Carter*, 83 N.C. App. at 65, 348 S.E.2d at 832. To that end, Defendant contends that the Qualified Plaintiffs do not have a proper purpose for their Inspection Demand because Plaintiff Templeton is a judgment creditor of Fortran and, in Fortran's view, is advancing the Inspection Demand to pressure Fortran to pay its outstanding debt to Templeton, force a shareholder buyout, and obtain pre-lawsuit discovery for a derivative action. (Def.'s Statement 3.) Defendant also makes a general contention that Plaintiffs lack good faith in making the requests because certain requested documents are available to the public on the otcmarkets.com website. (Def.'s Statement 3.)

28. The Court is unpersuaded. Defendant offers no evidence to support its speculation that the Qualified Plaintiffs are improperly using the Inspection Demand to pressure Fortran, and the documents that are available on the otcmarkets.com website are responsive to some but not nearly all of Requests 5–16. Moreover, without more, obtaining corporate records to investigate and prepare a derivative action is not improper and generally encouraged. *See, e.g.*, *In re Quintiles Transnational Corp. S'holders Litig.*, 2003 NCBC LEXIS 3, at *13–25 (N.C. Super. Ct. Dec. 19, 2003) (admonishing plaintiffs in derivative actions to seek corporate

books and records before filing complaint); *see also Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 980–82 (Del. Ch. 2003) (encouraging shareholder records inspection prior to filing derivative action).

29.     In marked contrast to Defendant's meager showing, the Qualified Plaintiffs have supported their Requests with a certified transcript of a recorded telephone conversation in which Fortran's CFO candidly discussed his view that Rink had potentially engaged in illegal activities as Fortran's CEO and caused Fortran to engage in improper and potentially illegal transactions.  (*See generally* Pls.' Notice Suppl. Information Supp. Position Statement Ex. A, ECF No. 26.1.)  This proof, when added to the Qualified Plaintiffs' allegations of purpose in the Complaint and Defendant's corresponding lack of proof, is more than sufficient to establish that the Qualified Plaintiffs' Inspection Demand is made in good faith and for a proper purpose, even without the benefit of the presumption of good faith which the Qualified Plaintiffs enjoy here.  Accordingly, the Court concludes that the Qualified Plaintiffs have established the good faith and proper purpose requirements of section 55-16-02(c).

          2.   Direct Connection to Proper Purpose

30.     Based on the Court's review of the record, the Court further concludes that the Qualified Plaintiffs have offered sufficient evidence to show that they have a good faith belief, supported by evidence, that CEO Rink has engaged in substantial wrongdoing, including self-dealing, corporate mismanagement, corporate waste, and other breaches of his fiduciary duties to Fortran.  (*See* Compl. Ex. A, at 3.)  The Court

has carefully reviewed Requests 5–16 and concludes that each Request is directly related to the Qualified Plaintiffs' proper purpose of determining whether "any improper transactions have occurred and to determine any possible mismanagement of Fortran or any possible misappropriation, misapplication, or improper use of any property or asset of Fortran." (Compl. ¶ 25.) Accordingly, the Court concludes that the Qualified Plaintiffs have established the "direct connection" required by section 55-16-02(c) for Requests 5–16.

### 3. Reasonable Particularity

31. Having determined that the "good faith and proper purpose" and "direct connection" requirements of section 55-16-02(c) have been met, the Court's determination of whether the Qualified Plaintiffs are entitled to the documents they have requested in most instances rises and falls with the Qualified Plaintiffs' compliance with the statute's "reasonable particularity" requirement.

32. For purposes of section 55-16-02(c), "reasonable particularity" requires "that the designation be sufficient to apprise a man of ordinary intelligence what documents are required." *Parsons*, 333 N.C. at 429, 426 S.E.2d at 691 (quoting 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2211, at 628–31 (1970)). Because "a shareholder should make more meaningful statements of purpose and the desired records when 'feasible[,]' [w]hether a shareholder has described his purpose or the desired records with reasonable particularity necessarily depends upon the facts and circumstances of each case." *Id.* (citing N.C. Gen. Stat. § 55-16-02 Official Comment 3).

33. Turning first to Requests 5–11, the Qualified Plaintiffs seek "all records relating to any board action" taken regarding certain specifically identified corporate transactions. (Compl. Ex. A, at 2; Compl. ¶ 24(e)–(k).) The Qualified Plaintiffs' formulation of these particular requests is overbroad. Section 55-16-02(b) makes plain that a qualified shareholder is entitled to "[r]ecords of any final action" by the board of directors or a committee of the board—not "all records relating to any board action." *See* N.C. Gen. Stat. § 55-16-02(b). Moreover, the statute's focus on the "final action taken" is conscious and deliberate. *See* Robinson, *supra*, § 10.03[2] ("The drafters of the North Carolina statute substituted this reference to 'final action taken' in lieu of the Model Act's reference to 'excerpt from minutes' with the intent of excluding discussions and preliminary actions by the board and its committees."). Accordingly, the Court will not enforce these Requests as drafted.

34. The remainder of Requests 5–11 are stated in clear and plain language and specifically identify the specific transaction for which records are sought. They reflect the Qualified Plaintiffs' actual knowledge of Fortran's records at the time of the Requests such that more particular requests were not then feasible. They also sufficiently advised Fortran of the requested documents to permit full compliance. The Court therefore concludes that Requests 5–11, modified to seek "records of any final action" by the board of directors rather than "all records relating to any board action," are stated with reasonable particularity under section 55-16-02(c). The Qualified Plaintiffs are therefore entitled to inspect and copy "records of any final action" with respect to the specific items identified in Requests 5–11.

35. Request 12 seeks "[a]ll records relating to Douglas W. Rink's use of Fortran's funds or assets for his personal use or benefit." (Compl. Ex. A, at 2; Compl. ¶ 24(l).) In contrast to the preceding Requests, this Request is vague and broadly stated and does not provide Fortran sufficient information to determine which specific documents the Qualified Plaintiffs seek to have produced.

36. Although the Qualified Plaintiffs clarified Request 12 in their brief in support of the Inspection Demand by identifying certain specific transactions—the purchase of property in Conover, North Carolina through the issuance of a Fortran debenture, the placement of Rink Media LLC vehicles on a B&L Telephone, LLC ("B&L") insurance account, and the retention of proceeds of certain B&L vehicles after they were sold—our courts are clear that the Court's assessment of "reasonable particularity" must focus on the Qualified Plaintiffs' actual demand, not on any subsequent court filings. *See Parsons v. Jefferson-Pilot Corp.*, 106 N.C. App. 307, 323, 416 S.E.2d 914, 923 (1992), *aff'd in part and rev'd in part on other grounds*, 333 N.C. 420, 426 S.E.2d 685 (1993) ("To determine whether a shareholder's *demand* meets the requirements of N.C.G.S. § 55-16-02(c), the trial court must focus upon the demand itself, not upon the shareholder's subsequent pleadings or motions filed in an attempt to compel inspection under N.C.G.S. § 55-16-04(b).").

37. Nevertheless, the Court observes that the fact that the Qualified Plaintiffs were able to produce a list of corporate records with such specificity shows that they had the ability to provide greater particularity than they did in Request 12 in the Inspection Demand. *Cf. Parsons*, 333 N.C. at 430, 426 S.E.2d at 691 ("[A] shareholder

should make more meaningful statements of purpose and the desired records when 'feasible.'" (quoting N.C. Gen. Stat. § 55-16-02 Official Comment 3)). For each of these reasons, the Court concludes that the Qualified Plaintiffs have failed to state Request 12 with reasonable particularity under section 55-16-02(c). As a result, the Court will not enforce this Request.

38. Request 13 seeks "[a]ll accounting records and financial statements of Fortran, including but not limited to balance sheets, general ledgers, income/profit and loss statements and cash flow statements." (Compl. Ex. A, at 2; Compl. ¶ 24(m).) As an initial matter, the Court has already addressed the production of Fortran's financial statements in its discussion of Request 4 above and concluded that Fortran has satisfied its obligations under section 55-16-02(a) concerning the production of those requested documents. The Qualified Plaintiffs' demand in Request 13 to obtain financial statements for periods beyond the past three years is contrary to applicable law. *See* N.C. Gen. Stat. § 55-16-01(e)(5) (requiring retention of "the financial statements required to be made available to shareholders for the past three years").

39. As to the Qualified Plaintiffs' Request for Fortran's accounting records, Chapter 55 provides that a qualified shareholder who satisfies the requirements of section 55-16-02(c) and makes timely demand may inspect a corporation's "accounting records." N.C. Gen. Stat. § 55-16-02(b). Although the term is left undefined in the Act, the Official Comments describe "accounting records" as "records that permit financial statements to be prepared which fairly present the financial position and transactions of the corporation." N.C. Gen. Stat. § 55-16-01 Official Comment 2. The

Court of Appeals has further observed that "accounting records . . . are generally defined as 'the formal journals and ledgers, and the vouchers, invoices, correspondence, contracts, and other sources or support for such records[.]'" *Parsons*, 106 N.C. App. at 318–19, 416 S.E.3d at 921 (citing Kohler's Dictionary for Accountants 13–14 (W.W. Cooper & Y. Ijiri eds., 6th ed. 1983)). Based on this precedent, the Court concludes that Request 13's demand to inspect and copy "accounting records," including "general ledgers," is stated with reasonable particularity under section 55-16-02(c) and that the Qualified Plaintiffs are therefore entitled to inspect and copy these documents.[6]

40.    Request 14 seeks "[a]ll UCC filings related to Fortran, including documents and communications relating to those filings." (Compl. Ex. A, at 2; Compl. ¶ 24(n).) Fortran has indicated that it will provide all of its UCC filings to the Qualified Plaintiffs, (Answer 4), and the Court will enforce Fortran's agreement. However, the Court cannot conclude that the "documents and communications relating to those filings" are "financial statements," "accounting records," or any other documents that a qualified shareholder is permitted to inspect and copy under Chapter 55. Thus, the Court will deny Request 14 to this extent.

---

[6]    Although section 55-16-02(b) excludes public corporations from shareholder inspection demands for accounting records, Chapter 55 defines a "public corporation" as "any corporation that has a class of shares registered under Section 12 of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78 *l* )." N.C. Gen. Stat. § 55-1-40(18a). Based on the evidence of record, the Court is persuaded that Fortran is not a company with a class of shares registered under Section 12 and thus is not covered by the public corporation exemption under section 55-16-02(b). *See First Citizens BancShares, Inc. v. KS Bancorp, Inc.*, 2018 NCBC LEXIS 23, at *15–16 (N.C. Super. Ct. Mar. 21, 2018) (holding publicly traded corporation without shares registered under Section 12 is not a "public corporation" under section 55-1-40(18a)).

41. Request 15 seeks "[a] complete record or list of Fortran's shareholders" as well as "transfer sheets" reflecting shareholder change information. (Compl. Ex. A, at 2; Compl. ¶ 24(o).) N.C. Gen. Stat. § 55-16-02(b)(3) provides that a qualified shareholder satisfying section 55-16-02(c) and making timely demand is entitled to inspect and copy "[t]he record of shareholders" of the corporation. As the Supreme Court has observed, the "legislative intent embodied in N.C.G.S. § 55-16-02(b)(3) is that shareholders be entitled to the information concerning the identity of shareholders which is possessed by the corporation in order that they may have the same opportunity as the corporation to communicate with the other shareholders." *Parsons*, 333 N.C. at 428, 426 S.E.2d at 690 (emphasis omitted).

42. While the corporation does not have to provide the shareholder information it possesses in any particular format, "a fair reading of the statute would require that the list include alphabetically the names and business addresses of shareholders and the number of shares held by each." Robinson, *supra*, § 10.03[4]; *see also* N.C. Gen. Stat. § 55-16-01(c) (requiring a corporation to keep "a record of its shareholders, in a form that permits preparation of a list of the names and addresses of all shareholders, in alphabetical order by class of shares showing the number and class of shares held by each").

43. Applying these principles here, the Court concludes that the Qualified Plaintiffs have satisfied the reasonable particularity requirements of section 55-16-02(c) and that Fortran should provide its most recent list of shareholders to the Qualified Plaintiffs showing the names, business addresses, and share ownership of

each Fortran shareholder. *See generally Parsons*, 333 N.C. at 428, 426 S.E.2d at 690 ("[R]equiring a corporation to divulge all of the shareholder information in its possession would completely effectuate the goal of fairness and equality between a corporation and its shareholders in [accessing shareholders]." (emphasis omitted)).

44. The Court also concludes that the Qualified Plaintiffs' transfer sheet request is stated with reasonable particularity and that, to the extent they exist and are in the Company's possession, Fortran should provide its "transfer sheets reflecting changes in the names and addresses of Fortran's shareholders and/or changes in the number of shares owned by each shareholder" as requested. *See id.* (stating that under section 55-16-02(b)(3), "it is necessary that shareholders have access to . . . [shareholder] information which the corporation itself has in its possession"). However, because 55-16-02(b)(3) is meant to permit a qualified shareholder "the same opportunity . . . to communicate with the other shareholders" as that typically enjoyed by the corporation by a proxy solicitation, *id.*, or in preparation for a stockholder meeting, *see White v. Smith*, 256 N.C. 218, 220, 123 S.E.2d 628, 630 (1962), the Court will limit the production to transfer sheets for the period on and after the date of the shareholder list, *see Hoepner v. Wachovia Corp.*, 2001 NCBC LEXIS 3, at *13–14 (N.C. Super. Ct. June 14, 2001) (requiring production of shareholder list and daily transfer sheets created thereafter); *see also Baron v. Strawbridge & Clothier*, No. 86-2474, 1986 U.S. Dist. LEXIS 26018, at *16–17 (E.D. Pa. May 1, 1986) (requiring production of stockholder list and transfer sheets from the date of the list); *Schnell v. Chris-Craft Indus., Inc.*, 283 A.2d 852, 853–54 (Del.

Ch. 1971) (requiring production of stock ledger or shareholder list and daily stock lists of transfers thereafter made).

45. Request 16 seeks "[a]ll records relating to the purchase, finance and ownership of the property located at 3210 16th Avenue SE, Conover, NC 28613." (Compl. Ex. A, at 3; Compl. ¶ 24(p).) While this Request is set forth with particularity, the Request does not seek records that a qualified shareholder has a right to inspect and copy under sections 55-16-02(a) or (b). Accordingly, the Court concludes that the Qualified Plaintiffs are not entitled to inspect and copy Fortran's records responsive to this Request.[7]

C.   Costs and Fees

46. Plaintiffs seek to recover the costs and expenses of this action from Defendant, including Plaintiffs' reasonable attorneys' fees. (Compl. 8.)

47. N.C. Gen. Stat. § 55-16-04(c) provides as follows:

> If the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the shareholder's costs (including reasonable attorneys' fees) incurred to obtain the order unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded.

48. A good faith refusal of a shareholder's inspection demand "normally will involve reasonable doubt whether the shareholder had the necessary good faith and proper purpose or whether the records demanded are directly connected to the shareholder's purpose." N.C. Gen. Stat. § 55-16-04 Official Comment. This analysis

---

[7] In the absence of any specific language seeking records of action by Fortran's board of directors, the Court declines to read Request 16 as seeking "records of any final action" taken by the board of directors with respect to the property described in this Request.

entails "a partially objective standard, in that the corporation must be able to point to some objective basis for its doubt that the shareholder was acting in good faith or had a purpose that was proper." *Id.*

49. Here, Defendant contends that Plaintiffs did not act in good faith because Templeton is a judgment creditor and the Inspection Demand involves an improper attempt to pressure Fortran to pay or reduce the debt the Company owes to Templeton or buy Templeton's shares. Defendant, however, has not offered any evidence to support this contention, and, on the record evidence here, Defendant's contention is implausible and supported only by speculation and conjecture. Not only have the Qualified Plaintiffs offered substantial evidence of their proper purpose, but Defendant has not offered any evidence or argument explaining how the Qualified Plaintiffs' Inspection Demand has any bearing on Fortran's rights and remedies in connection with Templeton's judgment or a possible buyout of his shares. As a result, the Court concludes that Fortran has failed to show that it had a reasonable basis to doubt the Qualified Plaintiffs' proper purpose for their Inspection Demand.

50. Defendant also refuses a number of the Requests on the grounds that they are overbroad or deal with matters that are over three years old. As discussed above, however, the Court has concluded that nearly all of the otherwise enforceable Requests are described with reasonable particularity as required by applicable law. Moreover, except for the Qualified Plaintiffs' request for financial statements for the past three years, Defendant seeks to impose a temporal limitation on certain of the Requests that does not appear in Chapter 55. As a result, the Court concludes that

Fortran has failed to show a reasonable basis for doubt as to the Qualified Plaintiffs' inspection rights based on these contentions.

51. Although Fortran has successfully resisted or caused modification of certain of the Requests as set forth above, the Court concludes, based on the evidence of record, that Fortran has failed to make documents available in response to a substantial number of the Requests without a reasonable basis for doubt as to the Qualified Plaintiffs' right to inspect the requested documents. The Court therefore concludes that Fortran should pay the Qualified Plaintiffs the costs and fees, including attorneys' fees, the Qualified Plaintiffs have incurred in seeking the records for which they have successfully obtained an order for inspection and copying. The Court will not award, however, the costs and fees incurred in the Qualified Plaintiffs' pursuit of the Requests the Court has disallowed.

## IV.

## CONCLUSION

52. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

   a. Plaintiffs' Requests are hereby **DENIED** with respect to Plaintiff Bertolami.

   b. Plaintiffs' Requests are hereby **GRANTED in part** and **DENIED in part** with respect to the Qualified Plaintiffs as follows:

i. No later than April 16, 2018, Defendants shall make available to the Qualified Plaintiffs the following records for inspection and copying:

1. resolutions adopted by Fortran's board of directors creating one or more classes or series of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding;

2. the minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three years;

3. all written communications to shareholders generally within the past three years that are not publicly available on the otcmarkets.com website;

4. records of any final action taken by the board of directors regarding the merger of New Telephone Company and Burke Mills into Fortran;

5. records of any final action taken by the board of directors regarding the acquisition of CCI Communications;

6. records of any final action taken by the board of directors regarding the acquisition of Wyncom;

7. records of any final action taken by the board of directors regarding the acquisition of Tower Performance Inc.;

8. records of any final action taken by the board of directors regarding the election of officers and directors at Fortran;

9. records of any final action taken by the board of directors regarding Fortran's borrowing of funds, including but not limited to the borrowing of funds from TCA Global Fund (FL), Peoples Bank of Newton, NC, BB&T Bank, and James M. Templeton;

10. records of any final action taken by the board of directors regarding the issuance of new Fortran common and preferred stock, including but not limited to the issuance of preferred shares to Douglas W. Rink and Richard W. Wilson;

11. all accounting records of Fortran, including but not limited to Fortran's general ledgers;

12. all UCC filings related to Fortran; and

13. the most current and complete record or list of Fortran's shareholders, showing the name of, business address of, and the number of shares owned by each shareholder, and all transfer sheets reflecting changes in the names and addresses of Fortran's shareholders and/or changes in the number of shares owned by each shareholder created thereafter.

ii. Defendant is further ordered to file a statement with the Court no later than April 16, 2018 certifying that Defendant has fully complied with paragraph 52(b)(i) above or attesting that it does not have any of the specific records the Court has ordered to be produced.

iii. Except as provided in paragraph 52(b)(i) above, Plaintiffs' Requests are **DENIED**, and specifically denied to the extent they seek:

1. "the financial statements required to be made available to the shareholders for the past three years," as requested in Request 4;

2. "[a]ll records relating to any board action," as requested in Requests 5–11;

3. "[a]ll records relating to Douglas W. Rink's use of Fortran's funds or assets for his personal use or benefit," as requested in Request 12;

4. "documents and communications relating to [Fortran's UCC] filings," as requested in Request 14;

5. "transfer sheets" reflecting shareholder change information created prior to the date of the most current complete record or list of shareholders produced under

subparagraph (b)(i)(13) above, as requested in Request 15; and

6. "[a]ll records relating to the purchase, finance and ownership of the property located at 3210 16th Avenue SE, Conover, NC 28613," as requested in Request 16.

iv. Defendant is hereby ordered to pay the Qualified Plaintiffs' reasonable costs and fees, including attorneys' fees, incurred in obtaining the relief ordered in paragraph 52(b)(i) above. The Qualified Plaintiffs shall file their request for costs and fees, including any affidavits and supporting materials, no later than April 16, 2018. The request shall include:

1. the total amount of attorneys' fees and costs incurred in obtaining the relief awarded;

2. the identification of each attorney performing the work for which the Qualified Plaintiffs seek fees and costs;

3. the hourly rates for each attorney performing the work for which the Qualified Plaintiffs seek fees and costs;

4. the specific tasks the attorneys performed for which fees are sought; and

5. the amount of time the attorneys spent in performing each such task;

but shall exclude any costs and fees incurred in pursuit of the relief sought but disallowed in paragraph 52(b)(iii) above.

v. Defendant shall file any opposition to the Qualified Plaintiffs' request for costs and fees, including any affidavits and supporting materials, no later than April 30, 2018.

vi. The parties' briefs concerning the Qualified Plaintiffs' request for costs and fees shall comply with Business Court Rule 7.8.

vii. The Court will determine at a later date whether a hearing will be held on the Qualified Plaintiffs' request for costs and fees.

**SO ORDERED**, this the 2nd day of April, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases